ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Thursday, September 21, 2017 4:30:15 PM
CASE NUMBER: 2017 CV 04415 Docket ID: 31363379
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

**IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **CHARLES A. WALDREN** | * | |
| 848 Riverview Terrace #308 | | Case No._____ |
| Dayton, OH 45402 | * | |
| | | |
| **Plaintiff,** | * | |
| | | |
| −vs− | * | |
| | | **COMPLAINT − BREACH OF** |
| **ALLSTATE VEHICLE AND** | * | **CONTRACT, BAD FAITH,** |
| **PROPERTY INSURANCE** | | **UNJUST ENRICHMENT,** |
| **COMPANY** | * | **PROFESSIONAL NEGLIGENCE** |
| 75 Executive Parkway | | **AND BREACH OF FIDUCIARY** |
| Hudson, OH 44237 | * | **DUTY, AND DECLARATORY** |
| | | **JUDGMENT; WITH JURY** |
| and | * | **DEMAND ENDORSED HEREON** |
| | | |
| **EVRON COLHOUN** | * | |
| 7200 North Main Street | | |
| Dayton, OH 45415 | * | |
| | | |
| **Defendants.** | * | |

_____

**NOW COMES** Plaintiff Charles A. Waldren, by and through counsel, and hereby states the following for his Complaint against Defendants:

## JURISDICTION AND VENUE

1. Plaintiff Charles A. Waldren currently resides at 848 Riverview Terrace #308, Dayton, Montgomery County, Ohio.

2. Defendant Allstate Vehicle and Property Insurance Company (hereinafter referred to as "Allstate") is a part of a multi-billion dollar corporation, with offices throughout Ohio including 75 Executive Parkway, Hudson, Ohio 44237 and is authorized to sell insurance products and conduct business in Montgomery County, Ohio.

3. Defendant Evron Colhoun (hereinafter referred to as "Colhoun") is a captive Allstate insurance agent with a principal place of business located at 7200 North Main Street, Dayton, Montgomery County, Ohio.

4. On October 15, 2016 a fire occurred in a dwelling located at 135 Stainton Avenue, Dayton, Montgomery County, Ohio, 45403.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

5. At the time of the fire and at all times relevant to this litigation, the 135 Stainton Avenue property was owned by Plaintiff Charles A. Waldren. Plaintiff originally purchased the property on July 5, 2016. The purchase of the property included a residential mortgage through Fifth Third Bancorp.

6. At the time of the fire and at all times relevant to this litigation, the 135 Stainton Avenue property was a covered property through an Allstate House and Home Policy of insurance issued by Allstate and procured by Colhoun. Plaintiff was a named insured on the aforesaid policy of insurance.

7. Plaintiff obtained the insurance policy referenced above through Allstate agent Colhoun. Plaintiff had utilized Colhoun for his insurance needs and Colhoun was made aware of Plaintiff's intentions with respect to purchasing and residing at the 135 Stainton Avenue property around the time he purchased it.

8. A copy of the Allstate Vehicle and Property Insurance Company policy (Policy #992575586) is attached hereto as Plaintiff's Exhibit 1.

9. As originally issued, Policy #992575586 had higher limits of liability than those set forth in Exhibit 1. The higher limits of liability were in place with respect to the policy on the date of the subject fire.

10. The Allstate policy is described as a House and Home policy and includes up to $139,265 in "Dwelling Protection." The policy contains $13,927 limits for "Other Structures Protection" as well as $104,449 limits for "Personal Property Protection" as well as $13,927 in additional living expense coverage. The policy has a $1,000 deductible applicable to all perils.

11. Plaintiff paid $607.82 in premiums to Allstate and Colhoun for the coverage provided by the policy to be operative from October 14, 2016 to October 14, 2017.

2

12. The fire, which occurred on October 15, 2016, resulted in damage to the dwelling and its contents. The fire caused damage totaling in excess of $25,000.00. The fire also made 135 Stainton Avenue uninhabitable and required Plaintiff to find another place to live.

13. Plaintiff submitted a valid claim for the damage caused by the fire at his property to Allstate.

14. Allstate denied Plaintiff's claim "for all purposes". The denial letter for the claim is attached as Exhibit 2 and is dated April 19, 2017. It claims that:

> Based on the investigation we conclude that you had the means, motive, and opportunity to be involved in the intentional setting of the subject fire. Further, we conclude that you concealed material information and made material misrepresentations during the claim investigation. These actions are in violation of the terms and conditions of your insurance policy. As such, Allstate is denying coverage for all purposes under the "intentional acts" and "misrepresentations, concealment, or fraud" provisions of your policy.

15. Plaintiff did not set the subject fire.

16. Plaintiff was not involved in intentionally setting the subject fire.

17. The Dayton Fire Department, which investigated the subject loss, determined that the fire occurred as a result of an unattended lit candle, which unintentionally and accidentally resulted in the fire.

18. Plaintiff did not misrepresent, conceal, or commit fraud with respect to the information provided to Allstate in its investigation of this fire and in fact, the information Plaintiff provided has been corroborated by the investigation of the Dayton Fire Department. A copy of the Dayton Fire Department's Incident Report is attached as Exhibit 3.

19. Moreover, to the extent that Plaintiff's claim in this matter has been denied due to discrepancies with respect to binding the policy, such discrepancies are the result of improper conduct on the part of Mr. Colhoun.

20. Contrary to the provisions of its policy as applied to the facts of this case, Allstate has refused to pay for any of the damage caused in the subject fire. Allstate has further failed to provide copies of recorded statements taken from the insured in its investigation of the subject fire and has also refused to provide the investigative report of fire cause and origin investigator Brent Schockman upon which it claims to rely to assert a denial in this case.

## FIRST CAUSE OF ACTION
(Breach of Contract)

21. Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten.

22. At all times pertinent hereto, Allstate provided coverage for the fire loss, which occurred on October 15, 2016 at 135 Stainton Avenue, Dayton, Montgomery County, Ohio.

23. Allstate has denied coverage for and refuses to satisfy its contractual obligations with respect to paying for the loss in this case.

24. Allstate's decision to refuse to fulfill its contractual obligations constitutes a breach of the insurance contract between it and it's insured, Charles A. Waldren.

25. Consistent with the terms of the Allstate policy, Plaintiff provided Allstate with timely notice of the loss and otherwise complied with all relevant and applicable terms and conditions of the policy including fully cooperating with Allstate's investigation of the loss.

26. Allstate may have breached other policy provisions.

27. Allstate's breach of contract directly and proximately caused damages to Plaintiff in an amount in excess of $25,000.00.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant Allstate in the amount in excess of $25,000, including compensatory damages, prejudgment interest and costs.

## SECOND CAUSE OF ACTION
(Bad Faith)

28. Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten.

29. The relationship between Allstate and its insured, Charles A. Waldren, mandates that Allstate act in good faith with respect to its handling, investigation and payment of claims submitted by Plaintiff.

30. Allstate has refused to provide coverage and/or refuses to pay monies pursuant to its contractual obligations with respect to the fire loss, which occurred on October 15, 2016 at 135 Stainton Avenue, Dayton, Montgomery County, Ohio.

31. Allstate acted in bad faith in that it failed to provide payment for reasonable and appropriate alternative living accommodations for Plaintiff after the claim was submitted, failed to conduct a thorough and appropriate cause and origin

investigation for the subject fire, ignored the determinations of the impartial Dayton Fire Department investigation of the subject fire, refused to provide its insured with transcripts of recorded statements which the insured provided as part of his cooperation with the investigation, constructively refused to provide its insured with the fire cause and origin report which Mr. Schockman generated and upon which it relied upon in order to deny the claim, and wrongfully cancelled Plaintiff's insurance policy.

32. Allstate may have committed bad faith with respect to its handling, investigation, or payment of this claim in other ways.

33. Allstate had no lawful basis to fail to provide coverage and/or refuse to pay the amounts of property damage, contents damage, alternative living expense coverage and potentially other coverages caused by the covered fire.

34. Allstate had no reasonable justification for its refusal to pay and had no reasonable justification for its failure to determine that its refusal to pay had no lawful basis.

35. Allstate's bad faith with respect to the handling of payment of the claim submitted by the Plaintiff directly and proximately caused damages to him in an amount in excess of $25,000.00.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant Allstate in the amount in excess of $25,000, including compensatory and punitive damages, prejudgment interest, attorney's fees and costs.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

36. Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten.

37. Plaintiff conferred a benefit upon Allstate by paying his policy premiums for the stated coverage provided for 135 Stainton Avenue as provided in the Allstate policy.

38. Allstate has retained the benefit which the Plaintiff conferred upon it by virtue of refusing to pay for the fire loss which occurred on October 15, 2016 and which was covered by the Allstate policy.

39. Allstate has further unjustifiably and without reasonable basis canceled Plaintiff's policy on the subject property and has not refunded the premium Plaintiff paid for that coverage.

40. Allstate's unjustified cancellation of the policy has the potential to jeopardize the terms of the mortgage obtained by Plaintiff on the property.

41. Under the circumstances, it would be unjust and inequitable for Allstate to retain any value from such benefit without paying for it.

42. As a result Allstate owes Plaintiff an amount in excess of $25,000.00.

**WHEREFORE** Plaintiff hereby demands judgment against Defendant Allstate in an amount in excess of $25,000, including compensatory damages, prejudgment interest, and costs.

## FOURTH CAUSE OF ACTION
(Professional Negligence and Breach of Fiduciary Duty)

43. Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten.

44. Based upon the insurance agent/customer relationship between Plaintiff and Evron Colhoun, Mr. Colhoun assumed a fiduciary obligation to Plaintiff with respect to managing risk, providing an appropriate insurance policy with appropriate policy limits and correctly completing the application and supplemental materials with respect to the insurance obtained for 135 Stainton Avenue.  Allstate characterized Colhoun to Plaintiff as someone who could "assist customers with their insurance decision making process by providing customers with information and high quality service."

45. In regard to the 135 Stainton Avenue property, Colhoun was aware of the factual circumstances of Plaintiff at the time of his purchase of the property and efforts to obtain insurance consistent with that purchase.  To the extent that any of Plaintiff's conduct in procuring the insurance is alleged by Allstate to be a misrepresentation of information associated with the application or procurement of the insurance that results in a denial of coverage by Allstate or reduction in the amount of insurance coverage available for coverage, Colhoun's conduct was negligent, intentional and/or otherwise wrongful.

46. Colhoun's conduct breached his duty to and fiduciary obligation towards the Plaintiff and failed to satisfy his professional standard of care as prescribed by Ohio Statutory and Common Law.

47. Colhoun's conduct directly and proximately caused damages to the Plaintiff in an amount in excess of $25,000.00.

**WHEREFORE** Plaintiff hereby demands judgment against Defendant Colhoun in an amount in excess of $25,000, including compensatory damages, prejudgment interest, and costs.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

48. Plaintiff incorporates by reference herein each and every preceding paragraph as if fully rewritten.

49. Pursuant to Ohio Revised Code §2721.01 *et seq*. Plaintiff requests a Declaratory Judgment from this Court with regard to the rights and obligations as between Allstate and Plaintiff with respect to Allstate policy #992575586 as it pertains to the dwelling coverage, contents coverage, and alternative living expense coverage provided for the fire loss which occurred on October 15, 2016.

50. In particular, Plaintiff requests this Court declare that the Allstate policy provides coverage under all of the aforementioned coverages to Plaintiff with respect to the October 15, 2016 fire loss at 135 Stainton Avenue, Dayton, Montgomery County, Ohio and that the coverage limits available are $139,265 in "Dwelling Protection", $13,927 in "Other Structures Protection", $104,449 in "Personal Property Protection", as well as $13,927 in additional living expense coverage. .

51. Plaintiff reserves the right to request additional declarations of Allstate's rights and obligations as appropriate.

52. Further, Plaintiff requests that this Court declare that Allstate is obligated to pay the Plaintiff pursuant to the dwelling coverage, contents coverage and ALE an amount in excess of $25,000.00 and costs.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant Allstate in the amount in excess of $25,000, including compensatory damages, prejudgment interest, and costs.

Respectfully submitted,


/s/ P. Christian Nordstrom
P. Christian Nordstrom (#0065439)
Pyper & Nordstrom, LLC
7601 Paragon Road, Suite 301
Dayton, OH 45459
(Tel.) 937-610-1990
(Fax) 937-610-1991
Email: pcnordstrom@panlawyers.com
Attorney for Plaintiff Charles A. Waldren

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury for each and every issue raised herein and throughout the course of this litigation.

/s/ P. Christian Nordstrom
P. Christian Nordstrom (0065439)



You're in good hands.

*Evron Colhoun*
*7200 N Main St*
*Dayton OH 45415-2540*

Information as of October 14, 2016
Policyholder(s)                                  Page **1** of 2
**Charles Waldren**
<u>Policy number</u>
992 575 586

Your Allstate agency is
**Evron Colhoun**
(937) 278-4000
colhoun@allstate.com

ⅢⅢ|ɪ|ᖯᴵᴵ|ᖯᴵᴵᴵᴵᴵᴵ|ᖯ|ᴵᴵᴵᴵᴵᴵᴵ|ᖯ|ᴵᴵᴵᴵ|ᴵᴵᴵᴵᴵᴵᴵ|
CHARLES WALDREN
135 STAINTON AVE
DAYTON OH 45403-1140



**Protect what makes**
**your house a home.**

**TrueFit®** life insurance offers customized coverage that
could help your loved ones pay off the mortgage in the
event you're no longer around. **Call me today.**

**$200,000 coverage**
**30-year term:*** $77.00 to $122.41 per month

## Thanks for Choosing Allstate—We're Happy to Have You with Us!

### Here's your insurance policy
We're happy you're extending your relationship with us. We truly value and appreciate your business.
Along with your new House & Home policy, I've included a guide to what's in this package and answers to some
common questions.

### You qualify for a Multiple Policy Discount!
I'm happy to pass along the great news that you now qualify for our Multiple Policy Discount. Keep in mind that
each time you purchase an additional Allstate policy, your discount could get even bigger! Besides the savings,
you're also enjoying the convenience of working with the same, experienced team on all of your Allstate policies.

### How to contact us
Please give me a call at (937) 278-4000 if you have any questions. It's my job to make sure you're in good hands.

Sincerely,

Evron Colhoun
Your Allstate Agent

NP209

*Term based on your estimated mortgage. Rates shown are for Preferred thru Standard Non-Smoker and based on Male, 47 as of the date above for Allstate TrueFit®, a term life insurance policy
issued by Allstate Assurance Co., Home Office: Northbrook, IL (series ICC14AC1 or AC14-1); in New York, Allstate Life Insurance Co, of New York, Hauppauge, NY (series NYLU818). Rate
set at company's sole discretion, subject to change and to insured meeting underwriting criteria. Other face amounts, guaranteed premium terms, or underwriting classes available, but
different rates, which may be higher. Premium paid differs by payment mode. Medical exam may be required. Premiums are level for term period selected then increase annually to age
exclusions, limitations and terms may affect coverage, renewal, cancellation, termination or other contractual rights and benefits.

**EXHIBIT**

tabbies®

1

Policy number: **992 575 586**
Policy effective date: October 14, 2016

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. **Next steps:** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. **Next steps:** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

## A guide to your welcome package

   

**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.

**Policy**
Your policy is your insurance contract; it lists all of the terms and conditions of your coverage.

**Policy Endorsements**
If we make any changes to your policy, these documents will include your new contract language.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features:
www.allstate.com/madesimple
Espanol.allstate.com/facildeentender

*** To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.**

064 070 034
16101S5102378
1100005702378064OH0001601050423070016880202012815

# House & Home Policy Declarations

Your policy effective date is October 14, 2016



**Allstate**
You're in good hands.

## Total Premium for the Policy Period

Information as of October 14, 2016

| Premium for property insured | $607.82 |
| **Total** | **$607.82** |

## Discounts (included in your total premium)

| Protective Device | **$16.05** | Multiple Policy | **$220.65** |
| Home Buyer | **$37.95** | Responsible Payment | **$218.92** |
| Welcome | **$55.88** | | |
| **Total discount savings** | | | **$549.45** |

## Insured property details*

Please review and verify the information regarding your insured property. Contact us if you have any changes.

Location of property insured: 135 Stainton Ave, Dayton, OH 45403-1140

**Dwelling Style:**
Built in 1911; 1 family; 1344 sq. ft.; 2 stories

**Foundation:**
Below grade basement, 100%

**Detached structure:**
Detached garage, 240 sq. ft.

**Interior details:**
One basic kitchen       One basic full bath

**Exterior wall type:**
100% vinyl siding

**Interior wall partition:**
100% plaster

**Heating and cooling:**
Average cost heat & central air conditioning, 100%

**Additional details:**
Interior wall height - 8 ft, 100%

**Fire protection details:**
Fire department subscription - no       1 mile to fire department

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

### Summary

**Named Insured(s)**
**Charles Waldren**
Mailing address
**135 Stainton Ave**
**Dayton OH 45403-1140**

Policy number
**992 575 586**

Your policy provided by
**Allstate Vehicle and Property Insurance Company**

Policy period
Beginning **October 14, 2016** through **October 14, 2017** at 12:01 a.m. standard time

Your Allstate agency is
**Evron Colhoun**
7200 N Main St
Dayton OH 45415-2540
(937) 278-4000
colhoun@allstate.com

*Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.*

*(continued)*

OH0YONB



House & Home Policy Declarations
Policy number: **992 575 586**
Policy effective date: October 14, 2016

## Insured property details* (continued)

**Roof details:**
Predominant roof type: Composition       Age of roof - 11 years
Roof geometry - Gable

**Mortgagee**

FIFTH THIRD BANCORP ISAOA ATIMA
P O Box 1266, Minneapolis, MN 55440-1266
Loan number: 421836974

**Additional Interested Party - None**

*This is a partial list of property details. If the interior of your property includes custom construction, finishes, buildup, specialties or systems, please contact your Allstate representative for a complete description of additional property details.*

# Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $65,000 | • $1,000 Windstorm and Hail<br>• $1,000 All other perils |
| Other Structures Protection | $6,500 | • $1,000 Windstorm and Hail<br>• $1,000 All other perils |
| Personal Property Protection | $48,750 | • $1,000 Windstorm and Hail<br>• $1,000 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $6,500 | |
| Family Liability Protection | $100,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Water Back-Up | Not purchased* | |
| Additional Fire Department Charges | Not purchased* | |
| Building Materials Theft | Not purchased* | |
| Electronic Data Recovery | Not purchased* | |
| Extended Coverage on Cameras | Not purchased* | |
| Extended Coverage on Jewelry, Watches and Furs | Not purchased* | |
| Extended Coverage on Musical Instruments | Not purchased* | |
| Extended Coverage on Sports Equipment | Not purchased* | |
| Extended Premises | Not purchased* | |
| Fair Rental Income | Not purchased* | |
| Golf Cart | Not purchased* | |
| Green Improvement | Not purchased* | |
| Home Day Care | Not purchased* | |

(continued)

House & Home Policy Declarations
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **3** of 3



Allstate
You're in good hands.

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Identity Theft Expenses | **Not purchased*** | |
| Increased Coverage on Theft of Silverware | **Not purchased*** | |
| Loss Assessments | **Not purchased*** | |
| Mine Subsidence | **Not purchased*** | |
| Secondary Residence | **Not purchased*** | |
| Select Value with Roof Surfaces Extended Coverage | Included | |
| Yard and Garden | **Not purchased*** | |

*This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your House & Home policy consists of the Policy Declarations, any Policy Declarations Addendum, and the following documents. Please keep them together.

- House & Home Policy – AVP81
- Windstorm and Hail Deductible Endorsement – AVP82
- Select Value With Roof Surfaces Extended Coverage Endorsement – AVP3
- Ohio Amendatory Endorsement – AVP103-2

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

- ▶ Your premium is calculated based upon the dwelling protection limit you selected in the amount of $65,000. You should be aware that this is less than the amount to rebuild your dwelling, which we have estimated to be $139,265. This is not a replacement cost policy.

- ▶ Do not pay. Mortgagee has been billed.

**Allstate Vehicle and Property Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

*Steven P. Sorenson*
Steven P. Sorenson
President

*Susan L. Lees*
Susan L. Lees
Secretary

OH070N8



## ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY

# House & Home Policy

## OHIO

AVP81

Policy number
**992 575 586**

Policy effective
**October 14, 2016**

Policyholders
**Charles Waldren**
**135 Stainton Ave**
**Dayton OH 45403-1140**

Your Allstate agency is
**Evron Colhoun**
**7200 N Main St**
**Dayton OH 45415-2540**



**Allstate Vehicle and Property Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062

064 070 034
16101557023780640H00001610150423070001680040220012815

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **2** of 22



Allstate

You're in good hands.

# Table of Contents

Agreements We Make With You................................................3

**General** ................................................................................3
Definitions Used In This Policy...............................................3
Insuring Agreement ..............................................................4
Conformity To State Statutes ...............................................4
Coverage Changes...............................................................4
Policy Transfer.....................................................................4
Continued Coverage After Your Death...................................4
Cancellation.........................................................................4
Misrepresentation, Fraud Or Concealment ............................4
What Law Will Apply.............................................................5
Where Lawsuits May Be Brought ...........................................5
Action Against Us.................................................................5
Arbitration...........................................................................5

**Section I—Your Property**.................................................5

**Dwelling Protection–Coverage A** ...................................5
Property We Cover Under Coverage A.....................................5
Property We Do Not Cover Under Coverage A..........................5

**Other Structures Protection–Coverage B** .....................5
Property We Cover Under Coverage B......................................5
Property We Do Not Cover Under Coverage B...........................5
Losses We Cover Under Coverages A and B..............................6
Losses We Do Not Cover Under Coverages A and B...................6

**Personal Property Protection–Coverage C** ....................8
Property We Cover Under Coverage C......................................8
Limitations On Certain Personal Property................................8
Property We Do Not Cover Under Coverage C...........................9
Losses We Cover Under Coverage C........................................9
Losses We Do Not Cover Under Coverage C...........................10

**Section I Additional Protection**.....................................12
Additional Living Expense...................................................12
Civil, Governmental And Military Authorities.........................12
Debris Removal..................................................................13
Emergency Removal Of Property..........................................13
Fire Department Charges.....................................................13
Temporary Repairs After A Loss...........................................13
Trees, Shrubs, Plants And Lawns.........................................13
Power Interruption.............................................................13
Arson Reward....................................................................13
Collapse............................................................................13
Land.................................................................................14
Lock Replacement..............................................................14

**Section I Conditions**.....................................................14
Deductible........................................................................14
Insurable Interest And Our Liability......................................14
What You Must Do After A Loss ...........................................14
Our Settlement Options......................................................14

How We Pay For A Loss ......................................................14
Our Settlement Of Loss......................................................16
Appraisal..........................................................................16
Abandoned Property...........................................................16
Permission Granted To You.................................................16
Our Rights To Recover Payment...........................................16
Our Rights To Obtain Salvage..............................................16
Action Against Us...............................................................16
Loss To A Pair Or Set.........................................................16
Glass Replacement.............................................................16
No Benefit To Bailee...........................................................16
Other Insurance.................................................................16
Property Insurance Adjustment............................................17
Mortgagee.........................................................................17
Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A
    Covered Water Loss........................................................17

**Section II—Family Liability And Guest Medical Protection** ...........17

**Family Liability Protection–Coverage X** .......................17
Losses We Cover Under Coverage X......................................17
Losses We Do Not Cover Under Coverage X............................17

**Guest Medical Protection–Coverage Y** .........................19
Losses We Cover Under Coverage Y......................................19
Losses We Do Not Cover Under Coverage Y............................19

**Section II Additional Protection** ..................................20
Claim Expenses.................................................................20
Emergency First Aid...........................................................20
Damage To Property Of Others............................................20

**Section II Conditions** ..................................................21
What You Must Do After A Loss ...........................................21
What An Injured Person Must Do—
    Guest Medical Protection–Coverage Y ..............................21
Our Payment Of Loss—Guest Medical Protection–Coverage Y....21
Our Limits Of Liability.........................................................21
Bankruptcy........................................................................21
Our Rights To Recover Payment—Family Liability
    Protection–Coverage X...................................................21
Action Against Us...............................................................21
Other Insurance—Family Liability Protection–Coverage X........22

**Section III—Optional Protection** ..................................22

**Optional Coverages** ....................................................22
Building Codes–Coverage BC...............................................22
Increased Coverage On Business Property–Coverage BP..........22
Fire Department Charges–Coverage F....................................22
Loss Assessments–Coverage G............................................22
Extended Coverage On Jewelry, Watches And Furs–Coverage J ...........22
Increased Coverage On Theft Of Silverware–Coverage ST........22



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

## Agreements We Make With You

**We** make the following agreements with **you**:

# General

## Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

2. **Building structure**—means a structure with walls and a roof.

3. **Business**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

   However, the mutual exchange of home day care services is not considered a **business**;
   b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time; or
      3) a portion is rented as a private garage.

4. **Dwelling**—means the single-family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

5. **Insured person(s)**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any person under the age of 21 in **your** care.

Under **Family Liability Protection–Coverage X** and **Guest Medical Protection–Coverage Y**, "insured person" also means:
   a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

6. **Insured premises**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;
      5) any premises used by an **insured person** in connection with the **residence premises**; and
      6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

7. **Occurrence**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

8. **Property damage**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

9. **Residence employee**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

10. **Residence premises**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

11. **Roof surface**—means the roof surface material type (slate, composition, wood, tile, metal, all other roof surface material types) of a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B** and all other roofing components, including, but not limited to:
   a) flashing, caps, vents, drip edges, and ice shields;
   b) sheeting, felt and membranes;
   c) modified bitumen, bitumen, rubber, built-up and sprayed polyurethane foam roofing;
   d) foam inserts and elastomeric coating;

064 070 034
16101S5702378
10000005702378064OH000016010S042307OT01688005022012815

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **4** of 22



You're in good hands.

e) finials, eave and gable trim and snow guards;

f) battens, counter battens, bird stops, gravel stops; and

g) coatings, adhesives, adherents and other finishing materials for roof surface materials and all other roofing components.

12. **We**, **us**, or **our**—means the company named on the Policy Declarations.

13. **Windstorm**—means wind with or without precipitation.

14. **You** or **your**—means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy period will be used to calculate any change in **your** premium.

## Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the current policy period for:

1. **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2. an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Cancellation

**Your** Right to Cancel:

**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:

**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1. nonpayment of premium;

2. the policy was obtained by misrepresentation, fraud or concealment of material facts;

3. material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or

4. there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for nonpayment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:

**We** have the right not to renew or continue the policy beyond the current policy period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the policy period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

## Misrepresentation, Fraud Or Concealment

**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

### What Law Will Apply

This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or other covered **occurrence**, may be governed by the laws of the jurisdiction in which that covered loss to property or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

### Where Lawsuits May Be Brought

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or other covered **occurrence**, may also be brought in the judicial district where that covered loss to property or other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

### Action Against Us

No one may bring an action against **us** unless there has been full compliance with all policy terms.

Any action against **us** to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within one year of the date the cause of action accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

### Arbitration

Any claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:

1.  no arbitrator shall have the authority to award punitive damages or attorney's fees;

2.  neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

3.  no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

## Section I—Your Property

## Dwelling Protection–Coverage A

### Property We Cover Under Coverage A:

1.  **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2.  Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**..

3.  Wall-to-wall carpeting fastened to **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1.  Any structure, including fences, or other property covered under **Other Structures Protection–Coverage B**.

2.  Land.

3.  Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## Other Structures Protection–Coverage B

### Property We Cover Under Coverage B:

1.  Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2.  Structures at the address shown on the Policy Declarations connected to **your dwelling** by only a fence, utility line, or similar connection.

3.  Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling**.

4.  Wall-to-wall carpeting fastened to **building structures**, other than **your dwelling**, at the address shown on the Policy Declarations.

### Property We Do Not Cover Under Coverage B:

1.  Structures used in whole or in part for **business** purposes.

2.  Any structure or other property covered under **Dwelling Protection–Coverage A**.

3.  Land.

4.  Construction materials and supplies at the **residence premises** for use in connection with the **dwelling**.

5.  Satellite dish antennas and their systems, whether or not attached to **building structures**.

064 070 034
1610155702378
T1000005702378064OH000061015042307001680602200282815

House & Home Policy
Policy number: 992 575 586
Policy effective date: October 14, 2016

Page **6** of 22


You're in good hands.

## Losses We Cover Under Coverages A and B:

**We** will cover sudden and accidental direct physical loss to property described in **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** except as limited or excluded in this policy.

## Losses We Do Not Cover Under Coverages A and B:

A. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1.  Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.  Water or any other substance that backs up through sewers or drains.

3.  Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.  Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5.  Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

6.  Actions taken by civil, governmental or military authorities:

    a)  to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or

    b)  requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

However, **we** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7.  Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8.  a)  War, whether declared or undeclared;
    b)  warlike acts;
    c)  invasion;
    d)  insurrection;
    e)  rebellion;
    f)  revolution;
    g)  civil war;
    h)  usurped power;
    i)  destruction for a military purpose; or
    j)  action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

9.  Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

10. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

    However, **we** will not apply this exclusion to sudden and accidental direct physical loss which consists of, is caused by, or would not have occurred but for:

    a)  a fire or an explosion at **your residence premises**;

    b)  smoke or soot resulting from food preparation at **your residence premises**;

    c)  the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;

    d)  smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:

        1)  were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and

        2)  did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;

    e)  spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;

    f)  spray, overspray, spatter or spillage of lawfully possessed, commercially available supplies by a person performing



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

cleaning or other maintenance services at a premises located within 500 feet of the **residence premises**;

g) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or

h) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

11. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a sudden and accidental direct physical loss to property located at the **residence premises** caused by an event, peril or condition not insured against by this policy.

When the lack of utility services results in freezing of:

a) plumbing, automatic fire protective sprinkler systems, heating or air conditioning systems;

b) household appliances; or

c) swimming pools, hot tubs or spas located within a heated portion of the **dwelling**, or their filtration and circulation systems located within a heated portion of the **dwelling**;

or when the lack of utility services results in discharge, leakage or overflow from within a), b) or c) above caused by freezing, **we** do cover sudden and accidental direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems, appliances, swimming pools, hot tubs, spas and their filtration and circulation systems instead of maintaining heat in the **building structure**.

12. Inability of an **insured person** to use, access or remain at the **residence premises** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises**, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:

a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or

b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

13. Seizure, confiscation or quarantine by civil, governmental or military authority.

**We** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

14. The manufacturing of any controlled substance.

15. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverages A and B** to produce a loss.

B. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

C. When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverages A and B**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

3. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:

a) may be reasonably expected to result from such acts; or

b) is the intended result of such acts.

064 070 034
16105570237B
11000005702378064OH000161015042307000168800702201281S

House & Home Policy
Policy number: 992 575 586
Policy effective date: October 14, 2016

Page **8** of 22


You're in good hands.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

4. Collapse, except as specifically provided in **Section I Additional Protection** under item 10, "Collapse."

5. a) Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
   b) mechanical breakdown;
   c) growth of trees, shrubs, plants or lawns, regardless of whether such growth is above or below the surface of the ground;
   d) rust or other corrosion;
   e) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; or
   f) insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds.

   If any of a) through f) causes the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, a household appliance or an automatic fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam.

   If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water or steam escaped.

6. Freezing of:
   a) plumbing, automatic fire protective sprinkler systems, heating or air conditioning systems;
   b) household appliances; or
   c) swimming pools, hot tubs or spas located within a heated portion of the **dwelling**, or their filtration and circulation systems located within a heated portion of the **dwelling**;

   or discharge, leakage or overflow from within a), b) or c) above, caused by freezing, while the **building structure** is vacant, unoccupied or being constructed, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems, appliances, swimming pools, hot tubs, spas and their filtration and circulation systems instead of maintaining heat in the **building structure**.

7. Freezing, thawing, pressure or weight of water, snow or ice, whether or not driven by wind. This exclusion applies to fences, pavements, patios, foundations, retaining walls, bulkheads, piers, wharves and docks. This exclusion also applies to swimming pools, hot tubs, spas, and their filtration and circulation systems, which are not located within a heated portion of the **dwelling**.

8. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
   a) from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance; or
   b) from, within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

9. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

10. Vandalism or malicious mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

11. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization.

## Personal Property Protection–Coverage C

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection–Coverage C**. The total amount of coverage for each group in any one loss is as follows:

1. $  200  —  Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

2. $  500  —  Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

equipment or in a **business**. Recording or storage media includes, but is not limited to:

a) tapes;
b) CDs, DVDs and other discs;
c) records;
d) disks;
e) reels;
f) cassettes;
g) cartridges; or
h) programs.

3. $ 1,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $ 1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

6. $ 1,000 — Trailers not used with watercraft.

7. $ 1,500 — Motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

8. $ 2,000 — Theft of firearms, their related equipment, and accessories.

9. $ 2,500 — Theft of goldware, silverware, pewterware and platinumware.

10. $ 5,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware, and furs, including any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item.

11. $ 10,000 — Theft of tools and their accessories.

12. $ 10,000 — Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

## Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled, or used solely for the service of the **insured premises**, and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders or tenants not related to **you**.

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Satellite dish antennas and their systems.

8. Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards, and smart cards.

9. Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

10. Manuscripts, including documents stored on electronic media.

## Losses We Cover Under Coverage C:

**We** will cover sudden and accidental direct physical loss to the property described in **Personal Property Protection–Coverage C** caused by the following, except as limited or excluded in this policy:

1. Fire or lightning.

2. **Windstorm** or hail.

   **We** do not cover:
   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure.** However, **we** do cover canoes and rowboats on the **residence premises.**

3. Explosion.

4. Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

064 070 034
160155702378
11000005170237806+0H000161050423070016880080802002815

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **10** of 22


**Allstate**
You're in good hands.

8.  Vandalism and malicious mischief.

    **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9.  Falling objects.

    **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system, or from a household appliance due to accidental discharge or overflow.

    **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system or a household appliance.

    **We** do not cover loss at the **residence premises** under items 12, 13, and 14, immediately above, which is caused by freezing while the **building structure** is vacant, unoccupied or under construction, or when freezing results from a lack of utility services at the **residence premises** to which item A.10 in **Losses We Do Not Cover Under Coverage C** applies, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

    **We** do not cover:

    a)  theft or attempted theft committed by an **insured person**;

    b)  theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;

    c)  theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;

    d)  theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**; or

    e)  theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

**Losses We Do Not Cover Under Coverage C:**

A.  Under **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

    1.  Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

    2.  Water or any other substance that backs up through sewers or drains.

    3.  Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

    4.  Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

    **We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

    5.  Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

    **We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

    6.  Actions taken by civil, governmental or military authorities:

        a)  to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance,



House & Home Policy
Policy effective date: October 14, 2016

replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or

b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

However, **we** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7. Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8. a) War, whether declared or undeclared;
   b) ...
   c) invasion;
   d) insurrection;
   e) rebellion;
   f) revolution;
   g) civil war;
   h) usurped power;
   i) destruction for a military purpose; or
   j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

9. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

However, **we** will not apply this exclusion to sudden and accidental direct physical loss which consists of, is caused by, or would not have occurred but for:

a) a fire or an explosion at **your residence premises**;
b) smoke or soot resulting from food preparation at **your residence premises**;
c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;
d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:
   1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and
   2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;
e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully

possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;

f) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or

g) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

10. Lack of utility services at the **residence premises**, meaning loss or interruption of lack of, or reasonable unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a sudden and accidental direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

When the lack of utility services results in freezing of:
a) plumbing, automatic fire protective sprinkler system, heating or air conditioning systems; or
b) household appliances;

or when the lack of utility services results in discharge, leakage or overflow from within a) or b) above caused by freezing, **we** do cover sudden and accidental direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

property **we** cover under **Personal Property Protection–Coverage C** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises** or any other location where the property is located, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:
a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

 
Allstate
You're in good hands.

b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

12. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverage C** to produce a loss.

B. Under **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

C. When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverage C**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

3. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

4. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or

d) maintenance;

of property whether on or off the **residence premises** by any person or organization.

## Section I Additional Protection

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

   Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
   a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c) 12 months.

   These periods of time are not limited by the termination of this policy.

   In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

   **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

   No deductible applies to this protection.

2. **Civil, Governmental And Military Authorities**
   **We** will pay the reasonable and necessary increase in living expenses for up to two weeks should civil, governmental or military authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by an event, peril or condition **we** insure against under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C.** However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

   The two-week period of time referenced above is not limited by the termination of this policy.

   No deductible applies to this protection.



3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**.

   No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   **We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
   **We** will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Dwelling Protection–Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to sudden and accidental direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft, or collapse of a **building structure** or any part of a **building structure**.

   **We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for sudden and accidental direct physical loss caused by **windstorm**, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

   **We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

   This coverage does not increase the **Dwelling Protection–Coverage A** limit of liability.

8. **Power Interruption**
   **We** will pay up to $500 for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption

of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
   **We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

10. **Collapse**
    **We** will cover at the **residence premises**:
    a) the entire collapse of a covered **building structure**;
    b) the entire collapse of part of a covered **building structure**; and
    c) direct physical loss to covered property caused by a) or b) above.

    For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
    a) a loss **we** cover under **Section I, Personal Property Protection–Coverage C**;
    b) weight of persons, animals, equipment or contents;
    c) weight of rain, snow or ice which collects on a roof;
    d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

    Collapse, as referenced herein, means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

    Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a sudden and accidental direct physical loss caused by one or more of the following:
    a) a loss **we** cover under **Section I, Personal Property Protection–Coverage C**;
    b) weight of persons, animals, equipment or contents;
    c) weight of rain, snow or ice which collects on a roof; or
    d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

    This coverage does not increase the limit of liability applying to the covered property.

064 070 034
16105570237806401H00016101504230070168801002201281S
T1000005702378806401H00016101504230070168801002201281S

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **14** of 22



Allstate.
You're in good hands.

11. **Land**

If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I, Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this additional protection.

12. **Lock Replacement**

When a key to a lock is stolen as part of a covered theft loss, **we** will pay, under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, as applicable, up to $500 for the reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality.

This coverage does not increase the limit of liability that applies to the covered property.

## Section I Conditions

1. **Deductible**

**We** will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest And Our Liability**

In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:

a) immediately give **us** or **our** agent notice. Report any theft to the police as soon as possible.

b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as **we** reasonably require:

1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.

2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

3) produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;

2) the interest **insured persons** and others have in the property, including any encumbrances;

3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;

4) any other insurance that may cover the loss;

5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period; and

6) at **our** request, the specifications of any damaged **building structure** or other structure.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

4. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5, "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**

Under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Dwelling Protection–Coverage A and Other Structures Protection–Coverage B**, without deduction for depreciation,



is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or

2) the whole amount of loss for property covered under **Personal Property Protection–Coverage C**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or

3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, regardless of the number of **building**

**structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Personal Property Protection–Coverage C**;

2) property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;

3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**;

4) **roof surface(s)** when the loss is caused by **windstorm** or hail; or

5) land.

Payment under a), b) or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. Under **Personal Property Protection–Coverage C, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2) the cost of repair or restoration; or

3) the Limit Of Liability shown on the Policy Declarations for **Personal Property Protection–Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

House & Home Policy
Policy number: 992 575 586
Policy effective date: October 14, 2016

Page **16** of 22

 **Allstate**
You're in good hands.

Personal Property Reimbursement will not apply to:

1) property insured under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, except wall-to-wall carpeting;

2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;

3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;

4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or

5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

6. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy. A **building structure** under construction is not considered vacant.

b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and
b) the action is commenced within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization that may be caring for or handling **your** property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
At each policy renewal, **we** may increase the Limit Of Liability shown on the Policy Declarations for **Dwelling Protection–Coverage A** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy period under **Dwelling Protection–Coverage A** for **your** dwelling and other property **we** cover under **Dwelling Protection–Coverage A**.

Any adjustment in the limit of liability for **Dwelling Protection– Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the Limit Of Liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the Limits Of Liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the Limits Of Liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

18. **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgage has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

19. **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**
In the event of a covered water loss under **Dwelling Protection– Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection– Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**.

## Section II—Family Liability And Guest Medical Protection

### Family Liability Protection–Coverage X

#### Losses We Cover Under Coverage X:

Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

#### Losses We Do Not Cover Under Coverage X:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
a) such **insured person** lacks the mental capacity to govern his or her conduct;
b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

064 0170 034
16101557023378
1T000005702378064OH00016101504230700168012022012815

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016



You're in good hands.

This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion **to**:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheelchair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower; or
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is sudden and accidental.

9. **We** do not cover any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

10. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

   **We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. **We** will not apply this exclusion if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

16. **We** do not cover **bodily injury** or **property damage** caused by:
    a) war, whether declared or undeclared;
    b) warlike acts;
    c) invasion;
    d) insurrection;
    e) rebellion;
    f) revolution;
    g) civil war;
    h) usurped power;
    i) destruction for a military purpose; or
    j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

17. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

18. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

19. **We** do not cover any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

20. **We** do not cover **bodily injury** or **property damage** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** or **property damage** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

21. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Guest Medical Protection–Coverage Y

### Losses We Cover Under Coverage Y:

**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
    a) arises out of a condition on the **insured premises** or immediately adjoining ways;
    b) is caused by the activities of an **insured person** or a **residence employee**;
    c) is caused by an animal owned by or in the care of an **insured person**; or
    d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
    a) such **insured person** lacks the mental capacity to govern his or her conduct;
    b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
    c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. **We** will not apply this exclusion to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
    a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
    b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
    c) a motorized wheelchair;
    d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
    e) a golf cart owned by an **insured person** when used for golfing purposes;

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **20** of 22

 **Allstate**
You're in good hands.

f)   a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g)   lawn or garden implements under 40 horsepower; or

h)   **bodily injury** to a **residence employee**.

6.   **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a)   has inboard or inboard-outboard motor power of more than 50 horsepower;

b)   is a sailing vessel 26 feet or more in length;

c)   is powered by one or more outboard motors with more than 25 total horsepower;

d)   is designated as an airboat, air cushion, or similar type of watercraft; or

e)   is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7.   **We** do not cover **bodily injury** arising out of:

a)   the negligent supervision by any **insured person** of any person; or

b)   any liability statutorily imposed on any **insured person**;

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.   **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

**We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is sudden and accidental.

9.   **We** do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10.   **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

**We** will not apply this exclusion to **bodily injury** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11.   **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12.   **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

13.   **We** do not cover **bodily injury** caused by:

a)   war, whether declared or undeclared;

b)   warlike acts;

c)   invasion;

d)   insurrection;

e)   rebellion;

f)   revolution;

g)   civil war;

h)   usurped power;

i)   destruction for a military purpose; or

j)   action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

14.   **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

15.   **We** do not cover **bodily injury** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

16.   **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Section II Additional Protection

**We** will pay, in addition to the limits of liability:

1.   **Claim Expenses**

**We** will pay:

a)   all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;

b)   interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;

c)   premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;

d)   up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;

e)   any other reasonable expenses incurred by an **insured person** at **our** request.

2.   **Emergency First Aid**

**We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3.   **Damage To Property Of Others**

At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we**



House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

**We** will not pay for **property damage**:
a) to property covered under **Section I** of this policy;
b) to property intentionally damaged by an **insured person** who has attained the age of 13;
c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
d) arising out of:
   1) past or present **business** activities;
   2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
   3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

## Section II Conditions

1. **What You Must Do After A Loss**
In the event of **bodily injury** or **property damage**, **you** must do the following:
a) Promptly notify **us** or **our** agent stating:
   1) **your** name and policy number;
   2) the date, the place and the circumstances of the loss;
   3) the name and address of anyone who might have a claim against an **insured person**;
   4) the names and addresses of any witnesses.
b) Promptly send **us** any legal papers relating to the accident.
c) At **our** request, an **insured person** will:
   1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
   2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
   3) attend any hearing or trial.
d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do—Guest Medical Protection—Coverage Y**
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
b) Give **us** written authorization to obtain copies of all medical records and reports.
c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss—Guest Medical Protection—Coverage Y**
**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection—Coverage X** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

**Our** total liability under **Guest Medical Protection—Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

5. **Bankruptcy**
**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment—Family Liability Protection—Coverage X**
When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**
a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Family Liability Protection—Coverage X**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within one year of such judgment or agreement.
c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Guest Medical Protection—Coverage Y**, unless such action is commenced within one year after the date the expenses for which coverage is sought were actually incurred.
d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II Additional Protection**, unless such action is commenced within one year after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred, or within one year after the date

House & Home Policy
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **22** of 22



of loss to the property if coverage is being sought under the **Damage To Property Of Others** provision.

e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

8. **Other Insurance—Family Liability Protection–Coverage X**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Section III—Optional Protection

### Optional Coverages

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Building Codes–Coverage BC**
**We** will pay up to the Limit Of Liability shown on the Policy Declarations for Building Codes coverage to comply with local building codes after covered loss to the **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of the **dwelling**.

2. **Increased Coverage On Business Property–Coverage BP**
The limitation on **business** property located on the **residence premises**, under **Personal Property Protection–Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

3. **Fire Department Charges–Coverage F**
The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Loss Assessments–Coverage G**
If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:

a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or

b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $500 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Extended Coverage On Jewelry, Watches And Furs–Coverage J**
**Personal Property Protection–Coverage C** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:

a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and

b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection–Coverage C**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

The following exclusions contained in **Losses We Do Not Cover Under Coverage C** apply to the coverage afforded under this **Coverage J**: items A.7, A.8, D.1 and D.3. In addition, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

a) wear and tear;

b) gradual deterioration;

c) inherent vice; or

d) insects or vermin.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection–Coverage C**, also applies to a loss under this coverage.

6. **Increased Coverage On Theft Of Silverware–Coverage ST**
The $2,500 limitation on theft of goldware, silverware, pewterware and platinumware under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.



## Policy Endorsement

Policy number: **992 575 586**
Policy effective date: October 14, 2016

*The following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Windstorm And Hail Deductible Endorsement – AVP82

Under **Section I Conditions**, Condition 1, **"Deductible,"** the
following is added:

**Windstorm** And Hail Deductible
The **windstorm** and hail deductible applies in the event of
covered loss caused by **windstorm** or hail.

The **windstorm** and hail deductible amount will appear on
**your** Policy Declarations. **We** will pay only when a covered
loss to which this deductible applies exceeds the
**windstorm** and hail deductible amount. **We** will then pay
only the excess amount.

If another deductible applicable to the loss exceeds the
**windstorm** and hail deductible, the greater deductible will
be applied to the loss.

All other policy terms and conditions apply.

## Policy Endorsement

Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **1** of 3



*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

# Select Value With Roof Surfaces Extended Coverage Endorsement – AVP3

I.  In the **General** section, the following changes are made:
A.  Under **Definitions Used In This Policy**, item 11 is deleted.

B.  The provision titled **Coverage Changes** is replaced by the following:

**Coverage Changes**
When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy period will be used to calculate any change in **your** premium.

**Your** premium is calculated by applying a ratio comparing the value **you** select for **your Dwelling Protection–Coverage A** limit of liability to the replacement cost of **your dwelling**. At each policy anniversary, the replacement cost amount that is used to calculate **your** premium will be revised to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy period under **Dwelling Protection–Coverage A** for **your dwelling** and other property **we** cover under **Dwelling Protection–Coverage A**.

II.  In **Section I Conditions**, the following changes are made:
A.  Item 5, **How We Pay For A Loss**, is replaced by the following:

5.  **How We Pay For A Loss**
Under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a)  Select Value. When the **dwelling** at the **residence premises** is a total loss, and **you** decide not to repair or replace at the **residence premises**, **we** will pay the Limit Of Liability as shown on the Policy Declarations for **Dwelling Protection–Coverage A**.

b)  Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1)  the whole amount of loss for property covered under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or

2)  the whole amount of loss for property covered under **Personal Property Protection–Coverage C**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

c)  Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph d) and paragraph e) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered



Policy endorsement
Policy number: 992 575 586
Policy effective date: October 14, 2016

property within 180 days of the actual cash value payment.

d) Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the **building structure(s)** for readily available construction materials or methods that are functionally equivalent to and less costly than obsolete, antique or custom construction materials or methods for the same use on the same premises;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with readily available construction materials or methods that are functionally equivalent to and less costly than obsolete, antique or custom construction materials or methods for the same use on the same premises; or
3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, regardless of the number of **building**

**structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Personal Property Protection–Coverage C**;
2) property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**; or
4) land.

Payment under a), b), c) or d) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or other structures.

e) Personal Property Reimbursement. Under **Personal Property Protection–Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

064 070 034
16101S57702378
1100000570237806404H0001610150423070016880160220122815

Policy endorsement
Policy number:  **992 575 586**
Policy effective date:  October 14, 2016

Page **3** of 3


**Allstate**
You're in good hands.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1)  the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2)  the cost of repair or restoration; or
3)  the Limit Of Liability shown on the Policy Declarations for **Personal Property Protection–Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:

1)  property insured under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, except wall-to-wall carpeting;
2)  antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3)  articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4)  property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5)  motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

All other policy terms and conditions apply.

B.  Item 17, **Property Insurance Adjustment**, is deleted.

III.  In **Section III—Optional Protection**, **Optional Coverages**, item 1, **Building Codes–Coverage BC**, is deleted.



## Policy Endorsement

Policy number: **992 575 586**
Policy effective date: October 14, 2016

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

# Ohio Amendatory Endorsement – AVP103-2

I.  In the **General** section the following changes are made:

  A.  The **Cancellation** provision is replaced by the following:

  **Cancellation**
  **Your** Right to Cancel:
  **You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

  **Our** Right to Cancel:
  **We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 30 days notice before the cancellation takes effect.

  When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
  1. non-payment of premium;
  2. the policy was obtained by misrepresentation, fraud or concealment of material facts;
  3. material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
  4. there has been a substantial change or increase in hazard in the risk **we** originally accepted.

  If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any other reason, **we** will give **you** at least 30 days notice.

  **Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

  **Our** Right Not to Renew or Continue:
  **We** have the right not to renew or continue the policy beyond the current policy period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the policy period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

  B.  The **Misrepresentation, Fraud Or Concealment** provision is replaced by the following:

  **Misrepresentation, Fraud Or Concealment**
  It is understood and agreed that the statements made by any named insured, or any applicant, in the application for insurance, during the application process, during the renewal process, or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy.

  This entire policy is void from its inception if any warranty made by any named insured, or any applicant, is found to be false.

  **We** may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

  C.  The following provisions are added:

  **Conditional Reinstatement**
  If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **we** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

  **Loss Reduction And Other Items**
  From time to time and in **our** sole discretion, **we** may provide **you**, or allow others to provide **you**, with:
  1. items, memberships, special offers, merchandise, services, classes, seminars or other things of value designed to help **you** or other persons insured under this policy manage the risks **you** or they face, including, but not limited to, loss reduction or safety-related items; or

064 070 034
1610155702372378
1100000570237806401H000016105042307001688017022012815

Policy endorsement
Policy number: **992 575 586**
Policy effective date: October 14, 2016

Page **2** of 2



2. items, memberships, special offers, merchandise, services, classes, seminars or things of any other type that **we** think may be of value to **you** or someone else insured under this policy.

These items, memberships, special offers, merchandise, services, classes, seminars or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

II. In **Section I—Your Property**, the following changes are made:

A. Under **Property We Cover Under Coverage C**, item 1. is replaced by the following:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

This limitation does not apply to personal property:
a) in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there; or
b) in use at a temporary residence when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

III. In **Section I Additional Protection**, item 1. is replaced by the following:

1. **Additional Living Expense**
**We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under Dwelling Protection–Coverage A, Other Structures Protection–Coverage B or Personal Property Protection–Coverage C makes **your** residence premises uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.

Payment for additional living expense as a result of a covered loss under Dwelling Protection–Coverage A,

Other Structures Protection–Coverage B or Personal Property Protection–Coverage C will be limited to the least of the following:
a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
c) 24 months.

These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

All other policy terms and conditions apply.





*Claims Great Lakes Northeast IN MI*
*PO BOX 660328*
*DALLAS TX 752660328*

hıllİİIIhıqhıllİlİİlİlhımıhhıqhımqllİİlqhlhl
CHARLES WALDREN
135 STAINTON AVE
DAYTON OH 454031140


April 19, 2017


INSURED: CHARLES WALDREN            PHONE NUMBER: 800-473-2578
DATE OF LOSS: October 15, 2016       FAX NUMBER: 855-219-7494
CLAIM NUMBER: 0432557064 1RB
POLICY NUMBER: 000992575586
LOSS LOCATION: 135 STAINTON AVE, DAYTON
LOSS TYPE: Property

**Registered Mail**
**Personal and Confidential**

Dear CHARLES WALDREN,

We have completed our investigation of the aforementioned loss and our findings render Allstate Vehicle and Property Insurance Company unable to pay your claim for the following reasons:

I am writing to you on behalf of Allstate Vehicle and Property Insurance Company (hereinafter "Allstate") regarding your claim of a fire loss, occurring on October 15, 2016 at 135 Stainton Avenue, Dayton, Ohio 45403. Please be advised after completing its investigation, Allstate is denying your claim for all purposes.

Based on the investigation, we conclude you had the means, motive and opportunity to be involved in the intentional setting of the subject fire. Further, we conclude that you concealed material information and made material misrepresentations during the claim investigation. These actions are in violation of the terms and conditions of your insurance policy. As such, Allstate is denying coverage for all purposes under the "Intentional Acts" and "Misrepresentation, Concealment or Fraud" provisions of your policy.

To help you better understand our decision, we direct your attention to the following provisions of your insurance contract, which are relevant to our analysis of coverage. The insurance policy and endorsements issued to the you contain the following provisions which are relevant to our analysis of this claim:

**Misrepresentation, Fraud Or Concealment**
It is understood and agreed that the statements made by any named insured, or any applicant, in the application for insurance, during the application process, during the renewal process, or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy.
This entire policy is void from its inception if any warranty made by any named insured, or any applicant, is found to be false. We may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

**Action Against Us**
No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions

0432557064 1RB

EXHIBIT

2

applies, unless:
a) there has been full compliance with all policy terms; and
b) the action is commenced within one year after the inception of loss or damage.

**Section I- Your Property**
. . . . . . . . . . . . . . . . . . . .
**Dwelling Protection- Coverage A**
. . . . . . . . . . . . . . . . . . . .
**Other Structures Protection-Coverage B**
. . . . . . . . . . . . . . . . . . . .
**Losses We Do Not Cover Under Coverages A and B:**
. . . . . . . . . . . . . . . . . . . .
**D. Under Dwelling Protection-Coverage A and Other Structures Protection-Coverage B**
of this policy, we do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
. . . . . . . . . . . . . . . . . . . .
3. Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
a) may be reasonably expected to result from such acts; or
b) is the intended result of such acts.
This exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime.

Based on your Examination Under Oath testimony and information and documentation obtained during our Company's investigation, substantial evidence exists which leads us to conclude that no coverage is available based upon the Policy's "Intentional or Criminal Acts" Provisions and the Policy's "Misrepresentation, Fraud or Concealment" Provisions. The information provided below is non-exhaustive, but intended to provide you with an overview of the reasons Allstate reached the aforementioned coverage decision.

**INTENTIONAL ACTS**
Allstate's investigation revealed substantiated evidence this was an intentional loss based on information demonstrating you had the means, motive and opportunity to set the fire.
**Means**
Origin and Cause Investigator Brent Schockman provided a report to Allstate. In his Report, he indicated this fire was "incendiary," stating "the cause of the fire is an intentional human act." All other causes for the fire were examined and eliminated.
**Motive**
• Financial Hardship
Our investigation shows that you worked part-time but did collect Social Security Benefits. You testified you receive approximately seven hundred and ninety dollars ($790.00) per month from Social Security Disability and inconsistent paychecks from Family Dollar.
Your Main Share Savings account was approximately $500.00 in April. However, his financial documents show the amount dropped to $5.31 in October 2016 (the month of the subject fire loss).
Your Day Air Credit Union checking account shows that you receive a weekly paycheck from Family Dollar. The paychecks range from $45.00 to $320.00 each week.
The highest balance of the checking account was $638.21 for the month of January in 2016. In August 2016, the balance reached its lowest at negative - $83.20. The month before the fire, the balance of the account was - $39.57. In October 2016, the month of the fire, the balance reached $238.63.
• Inability to Pay Expense to have Electricity restored at Residence
The subject loss location was without electricity since September 2016 when the home's fuse box "blew out." You testified at your Examination Under Oath that the house was without electricity for nearly one month at the time of the fire on October 15, 2016. During that period, you took out a loan against your Ford Taurus automobile for $1,500 to purchase a new fuse box and pay for the installation in order to have service resumed. However, despite your reported efforts to have electric service restored, the home remained without electricity at the time of the fire.
• Financial Difficulty Obtaining Homeowners Insurance Due to Condition of the Subject Property
Mr. Evron Colhoun is the Allstate agent who sold the policy to you and communicated with you and Ms. Talley prior to the

subject fire loss regarding the homeowners' policy. Mr. Colhoun advised there were numerous problems with the issuance of the policy due to the condition of the home. Ms. Talley contacted Mr. Colhoun daily in the days leading up to the subject fire loss to inquire whether the policy was in effect.

The following timeline of events occurred leading up to and surrounding the subject fire loss involving the issuance of the policy:

--In early May of 2016, Mr. Colhoun first wrote a policy for the subject property.

--The purchase of the home was to close in July. However, there were several issues with the house which required improvement prior to the policy being issued. The main issue at the time was that there was tar on the roof. Tar was used instead of flashing, and the roof was not considered up to Code. Also, there were significant issues with the garage. Ultimately, the garage was excluded from the Policy.

--You did not comply with the need for repairs prior to August of 2016. The Policy expired due to the fact that you did not comply with the improvements within ninety (90) days. At the time, you indicated to Mr. Colhoun that you did not have the money to make the repairs.

--Eventually the problems were fixed in early October 2016. Approximately three to five (3-5) days prior to the fire, you called Mr. Colhoun and sent pictures to document that the roof issue had been fixed.

--Between October 13-14th Evron Colhoun went to inspect the home to make sure that the roof issue had indeed been cured.

--Upon being satisfied that the roof had been fixed, Evron Colhoun had the Policy bound.

--On October 15th, the fire occurred.

--The following week, an Inspector for Allstate arrived at the property to check and complete the Risk Report. However, by this time the home had burnt and the inspector terminated the Policy.

**Opportunity**

You have testified that on the date of the loss you and Ms. Talley left the residence between 9:40 p.m. and 9:45 p.m. The documentation from Dayton Fire Department indicates that a call was made to report the fire at 10:08 p.m. Thus, according to your timeline, less than thirty (30) minutes passed between you leaving the residence and the fire department receiving a report of the fire.

No one was home at the time the subject loss occurred. The residence was secured and no other individuals were identified in the area at the time of the loss. Your neighbor, who obtained a key to the insured residence, indicated that the front door was locked after she viewed the fire. Upon the fire department's arrival, the residence was still secured. No evidence of forced entry was discovered by the local fire department.

**Concealment and Material Misrepresentations**

It is Allstate's conclusion you have also concealed and misrepresented material facts and circumstances during the claim investigation. As outlined above, Allstate's investigation of this fire loss claim determined you had the means, motive and opportunity to be involved in the intentional setting of the fire. During your Examination Under Oath, you denied setting the fire intentionally, therefore, there is a clear and material discrepancy between your Examination Under Oath Testimony and the evidence from our investigation. Further, you testified you were at home up until you left for the Deeds Pointe Dog Park. You testified you left the residence between 9:40 pm and 9:45 pm on the night of the loss. The Dayton Fire Department received a call reporting the fire less than thirty (30) minutes after you exited the home.

You have maintained that there were no other ignition sources in the dining room aside from a battery-powered wall clock, as well as the ADT security panel and possibly a thermostat. Your testimony further confirmed the location of the candle was sufficiently away from the drapes so that they would not become ignited from the candle's flame. However, as indicated above, it has been determined this fire was a result of human involvement and the fire has been classified as "incendiary." It is our opinion the misrepresentations and concealments related to the subject fire were purposeful and intended to discourage, mislead, or deflect Allstate's investigation, and your possible connections or involvement in the subject fire loss. Please be advised that this letter is not intended to advise you of each and every individual factual basis supporting our decision to deny your claim.

If you believe we have reached this decision in error and have new evidence for us to consider, or dispute any of the facts outlined in this Coverage Decision Letter, please send the documentation within Fourteen (14) days to our legal counsel at the following address:

**J. Patrick Schomaker, Esq.**
**Smith, Rolfes & Skavdahl, Co., LLP**
**600 Vine Street, Suite 2600**
**Cincinnati, Ohio 45202**
Tele: (513) 579-0080
Fax: (513) 579-0222

Email: pschomaker@smithrolfes.com

Please be advised nothing contained in this letter in any way waives or voids any of the terms and conditions of the applicable Policy of Insurance . Allstate Vehicle and Property Insurance Company shall continue to insist upon full compliance with all policy terms and conditions.

If you have any questions regarding the full denial of your claim, please feel free to contact me.

**Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.**

Sincerely,

*RICHARD BURKHART*

RICHARD BURKHART
800-473-2578 Ext. 8213475
Allstate Vehicle and Property Insurance Company



## Dayton Fire Department (OH)
### INCIDENT REPORT
**Official Law Enforcement Report – Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158

**BATS ID: 438014**

## Incident Date/Time/Location

**Status**

Investigation Open

**Jurisdiction**

Primary

**Start Date/Time**

10/15/2016 22:08 Saturday

**Address - Street Address**

135  Stainton Avenue

**City/State/Zip**

Dayton, OH 45403

**County**

Montgomery

## Investigator Information

**Name**

Jennifer M Godsey

**Phone**

937-333-4531

**Email**

jennifer.godsey@daytonohio.gov

**Title**

Fire Investigator

## Property Use or Target Information

**Type**

Residential

**Subtype**

1 (Single Family) or 2 Family
Dwelling

**EXHIBIT**

tabbies®

3



### Dayton Fire Department (OH)
#### INCIDENT REPORT
**Official Law Enforcement Report - Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158

**BATS ID:** 438014



---

## Scene Details

### Area of Origin/Device Placement

**Area of Origin**

Assembly, Sales Areas (Groups of People)

**Area of Origin Subtype**

Common room, den, family room, living room, lounge

### Fire Descriptors

Carelessness, lack of or disregard of fire safety principles

Open Flame

Ordinary Combustibles

### Damage and Casualties

**Est. Damage**

$15000.00

**Pre Incident Value**

$0.00

### Miscellaneous Information

**Latitude**

39.765435

**Longitude**

-84.166001

**Investigator Right of Entry**

Exigent Circumstances

This report may not be disseminated outside your agency without permission from the originating agency.

Page: 2



## Dayton Fire Department (OH)
### INCIDENT REPORT
**Official Law Enforcement Report – Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158        **BATS ID:** 438014

---

## Device/Explosives Details

**Device: Materials**

| Type | Quantity |
|------|----------|
| Explosives | 0 |

**Description**

## Dayton Fire Department (OH)
### INCIDENT REPORT
**Official Law Enforcement Report - Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158          **BATS ID:** 438014



---

## Person/Organization Information

### Name

WALDREN, CHARLES

**DOB**                                   **Race**                    **Ethnicity**

6/16/1969                                 White

**Sex**                                   **Age at time of Incident**

M                                         47

**Juvenile**                              **SSN**

No

**Relationship(s)**

Owner

                                                                    **Notes**

                                                                    Owner/resident. Not
                                                                    home at time of fire.

### Address Information

**Street Address**

135  Stainton Avenue

**City/State/Zip**          **County**

Dayton,  45403              Montgomery

### Contact Information

**Primary Phone**

937-305-4430

---



### Dayton Fire Department (OH)
#### INCIDENT REPORT
**Official Law Enforcement Report – Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:**    2016-158                    **BATS ID:** 438014



---

## Name

TALLEY, DARLENE

**DOB**                                              **Race**                    **Ethnicity**

10/24/1966                                           White

**Sex**                                              **Age at time of Incident**

F                                                    49

**Juvenile**                                         **SSN**

No

**Relationship(s)**

Resident

**Notes**

Resident.  Not home at
time of fire.





**Dayton Fire Department (OH)**
INCIDENT REPORT
**Official Law Enforcement Report - Unauthorized Dissemination is Prohibited**
**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158                    **BATS ID:** 438014

---

**Narrative(s)**

**Title**

Narrative #1

**Author**

Jennifer Godsey

9373334531

jennifer.godsey@daytonohio.gov

**Description**

I was dispatched to the location for the purpose of investigating the fire. Upon my arrival, fire extinguishment was complete and natural ventilation was taking place with doors and windows open. I completed an exterior examination and took photographs.

The structure is a 2-story, single family, vinyl sided, wood frame residence. On the A side, I noted melting, deformity, and failure of the vinyl siding lining the ceiling of the front porch, specifically at the entry door. On the C side, I observed heavy fire damage to the ceiling of back porch, with charring, melting, and failure of the vinyl siding. Wood ceiling joists exposed from the failed siding were charred, with heaviest being at a window closest to the D side. There are 2 windows on the C side, as well as a rear entry door. The window closest to the D side failed and remaining glass, as well as broken glass found on the porch, had smoke staining on the interior side, indicating the window was closed at the time of the fire. The upper portion of the window frame had heavy black soot wisps extending from interior to exterior and extending upward toward the ceiling of the back porch. Also on the C side, I found the electric meter, which had the meter removed and a clear face plate intact, indicating there was no active service to the residence. On the D side, a first floor window closest to the C side had failed and as with the window glass on the C side window, had smoke staining on the interior side of the glass.

I completed and interior examination and took photographs. In the front living room area and kitchen, I found heavy heat/smoke damage, with several protected spaces observed on the walls in the front living room area, from what appeared to be pictures hanging during the fire. All upstairs rooms sustained heat/smoke damage, but no direct fire damage. At the rear entry door in the kitchen, I observed keys hanging in the double-cylinder deadbolt lock. I found numerous smoke detectors throughout the house, with some still hanging on the walls and others deformed and on the floor from failure. Upon entering the residence, I noted at least one of the detectors still alerting, that being the one in the front living room area. It was found on the floor along the D wall, closest to the A wall. In the basement, I found the cover to the electric panel was off and lying against a wall, an arc burn on the panel cover, and the panel dismantled with wiring disconnected. I observed heavy fire damage to the room leading off the front room (room identified in the C/D corner of the structure). This room had wood paneled walls, with the D wall heavily charred in front of the window and a clear line of demarcation noted starting at the baseboard under the window and leading upward and outward. The wood paneling on the C wall was completely consumed by fire, exposing the gypsum board under the paneling. The gypsum board was heavily charred and failed in some portions of the wall; the C wall to the right of the window and the wall adjacent the kitchen above a desk, exposing the lath boards. There was a desk located in the southwest corner of the room, in a corner along the C wall and a wall that was adjacent to the kitchen. The desk was heavily charred and a line of demarcation could be seen extending from behind the desk and leading out to a doorway that led into the kitchen. On top of the desk, I noted a large amount of papers and ordinary combustibles, as well as a desktop computer, including the monitor and keyboard and a hard drive sitting on

---









**Dayton Fire Department (OH)**
INCIDENT REPORT
**Official Law Enforcement Report - Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158          **BATS ID:** 438014

---

an "L" shaped portion of the desk just to the right of the desk. The left side of the hard drive, which was facing the desk, was consumed by fire and allowed the inner workings of the hard drive to be exposed. On the right corner of the desk, near the hard drive, I noted a shallow clear glass jar approx. the diameter of a softball. Inside the glass jar I found what appeared to be a waxy substance consistent with a candle, melted in the bottom portion of the shallow jar and fire debris on top of the melted substance. The C wall window frame sustained heavy charring on the side closest to the C/D corner, with the charring starting approx. halfway up on the opposite side and traveling across the top and to the right side. The D wall window also sustained heavy charring, with the right side failing. The carpeted flooring was heavily charred and burnt in a pattern traveling in a "V" pattern with the left line of the V starting at the middle of the C wall window and the right line of the V starting at the right edge of the D wall window. This burn pattern on the carpet traveled outward to the middle of the room. The wood subfloor was exposed due to the carpet being consumed from fire. Once washed, the wood subfloor did not reveal any unusual burn patterns. There was heavy charring to the baseboards along the C wall near the desk and extending over into the corner and along the D wall toward the front of the room. There was a large pile of what appeared to be clothing or cloth items piled in the C/D corner. The top of the pile had a heavy char layer, with the underlying areas being protected with some of the cloth being identifiable. The drywall ceiling was heavily charred with evidence of clean burn. In the ceiling area above the C/D corner, a portion was completely burnt through, exposing the wood ceiling joists. Also in the room was a wooden table and chair, situated on the left side of the doorway leading into the kitchen. This was opposite the side where the previously noted computer desk was situated. The table top sustained heavy char, as did the back side of the chair, which was facing the C/D corner. Above the C wall window, I noted an adjustable curtain rod still hanging.

I noted the only competent ignition source at the area of origin, that being the C wall/ C/D corner, was one created by a human act. Based upon the information I received, the location of the fire, fire patterns, and my training and experience I have determined that the fire was caused by an unattended candle left lit in the residence by the homeowner. This fire is ruled accidental.



**Dayton Fire Department (OH)**
INCIDENT REPORT
Official Law Enforcement Report - Unauthorized Dissemination is Prohibited

**Incident Type:** Fire / Accidental
**Agency Incident ID:**    2016-158                    **BATS ID:** 438014



---

**Title**

Narrative #2

**Author**

Jennifer Godsey

9373334531

jennifer.godsey@daytonohio.gov

**Description**

I spoke with a neighbor, Shanna Lycan, (148 Stainton Ave. – 469.2875) who was also the caller-in. Lycan said her kids were sitting their carved pumpkins out on their front porch when they told her they saw an orange glow in the front windows of the house across the street. She said they first thought it was a candle, but then realized it was flames. Lycan said she and another neighbor went to the house, checking to see if anyone was home. She said they got no answer at the door, so the neighbor opened the door with the key she was previously provided. Lycan said as soon as the door was opened, they felt the heat of the fire and quickly closed and locked the door.

I talked with the first-in fire crew who stated when they arrived on scene they could flames inside the house and had smoke, but neither window, C or D side, failed at that point. They found the residence secured and no one home; however a neighbor met them and unlocked the front door for them. The rear door was unlocked by fire crews with keys left in the door. Once inside, they were met with heavy flames in the back room, C/D side of the house.

While conducting the interior examination, I was notified the homeowners arrived on scene. I met with Charles Waldren and Darlene Talley. Talley said they bought the house in July 2016 and in Sept 2016, had an issue with the electrical panel after it sparked. She said DFD responded and because of electrical problems, DP&L arrived and disconnected their service until it was fixed and inspected. Talley said a few days after they moved in, they found a large hole in the roof and the issues combined, they did not have the money to have the electric fixed. Talley said they were still living in the house, using candles for light and the appliances they could with the gas that was still on. Talley said, as they usually do, they left tonight around 2145 to go to the dog park. She said they have 2 dogs and because of the small yard, like to get the dogs out to run. I asked her if it was possible she left a candle burning before they left and she said it was possible. Talley said she knew she left the candle burning so they didn't come home to a dark house and could see when they entered. I asked her about the candle and if it was in the clear glass dish on the computer desk, which she said it was. I asked Talley about having curtains on the C wall window and she said there were curtains hanging on the window.

---



### Dayton Fire Department (OH)
#### INCIDENT REPORT
**Official Law Enforcement Report - Unauthorized Dissemination is Prohibited**

**Incident Type:** Fire / Accidental
**Agency Incident ID:** 2016-158                **BATS ID:** 438014

This section intentionally left blank

Fire Investigator - Godsey, Jennifer

Date

Approving Official

Date

This report may not be disseminated outside your agency without permission from the originating agency.